GOLEC v METAL EXCHANGE CORPORATION

Docket No. 151639. Submitted April 7, 1994, at Detroit. Decided
    January 17, 1995, at 10:00 A.M. Leave to appeal sought.

Stanlislaw Golec brought an action in the Wayne Circuit Court
    against Metal Exchange Corporation, doing business as Conti-
    nental Aluminum Company, and certain supervisory employ-
    ees, seeking damages for personal injuries suffered in the
    course of his employment with defendant corporation when an
    explosion in a furnace he was loading caused molten aluminum
    to splash on him and alleging that the injuries were the result
    of acts of the defendants that constituted an intentional tort
    within the meaning of the intentional tort exception to the
    exclusive remedy provision of the Worker's Disability Compen-
    sation Act, MCL 418.131(1); MSA 17.237(131)(1). The court,
    Samuel A. Turner, J., granted summary disposition for the
    defendants, holding that the plaintiff's complaint failed to state
    a claim upon which relief could be granted because the allega-
    tions in the complaint failed to establish an intentional tort
    within the meaning of § 131(1). The plaintiff appealed.

    The Court of Appeals *held:*

    1. A motion for summary disposition under MCR 2.116(C)(8)
    for failure to state a claim upon which relief can be granted
    tests the legal sufficiency of a claim on the basis of the plead-
    ings alone. All factual allegations made in support of the claim
    and any inferences that reasonably can be drawn from those
    allegations are accepted as true.

    2. Section 131(1) of the Worker's Disability Compensation Act
    exempts from the operation of the exclusive remedy provision
    tort claims for damages resulting from intentional torts. An
    intentional tort within the meaning of § 131(1) occurs where
    there is a deliberate act by an employer and a specific intent by
    the employer to injure the employee. The specific intent to
    injure is established where an employer had actual knowledge
    that injury was certain to occur and wilfully disregarded that
    knowledge.

    3. The plaintiff alleged that the defendants were aware that
    the aluminum scrap he was loading into the furnace was wet,
    that wet scrap could cause the molten aluminum to explode
    and splash out of the furnace, that the tractor that his supervi-

sor told him to use lacked adequate shielding to protect the driver from splashes, that he had not been provided with proper protective clothing, and that he already had been slightly injured by molten aluminum splashed by a small explosion shortly before the incident that caused his serious injuries and that the defendants nevertheless required him to continue the loading of the furnace under those conditions. The allegations of the plaintiff are sufficient to state a claim for an intentional tort under § 131(1) and cannot be said to be so unenforceable as a matter of law that no factual development could possibly justify a right of recovery.

Reversed and remanded.

*Kepes, Wine & McNeilage, P.C.* (by *Carol A. McNeilage*) (*Paskin, Nagi & Baxter, P.C.,* by *Jeannette A. Paskin,* of Counsel), for the plaintiff.

*Vandeveer Garzia* (by *Pamela L. Abbott*), for the defendants.

Before: GRIBBS, P.J., and WEAVER and R. P. HATHAWAY,* JJ.

GRIBBS, P.J Plaintiff filed suit against defendants for personal injuries sustained during the course of his employment when an explosion in a furnace caused molten aluminum to splash on him, resulting in serious burns. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), alleging that plaintiff's claim did not fall within the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.131(1); MSA 17.237(131)(1). The trial court granted summary disposition for defendants and dismissed plaintiff's complaint. Plaintiff appeals as of right. We reverse.

Initially, we note that the trial court did not grant defendants' motion for summary disposition

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pursuant to MCR 2.116(C)(10), but instead dismissed plaintiff's first amended complaint for failing to state a claim upon which relief could be granted. The trial court concluded that plaintiff's allegations failed to state an intentional tort falling within the exception to the exclusive remedy of the WDCA and thus determined that it was unnecessary to address the sufficiency of the evidentiary support for plaintiff's allegations. Consequently, we limit our review to a determination of whether summary disposition was appropriately granted pursuant to MCR 2.116(C)(8).

Summary disposition of a claim may be granted on the ground that the opposing party "has failed to state a claim on which relief can be granted." MCR 2.116(C)(8); *Radtke v Everett,* 442 Mich 368, 373; 501 NW2d 155 (1993). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts alleged. *Marcelletti v Bathani,* 198 Mich App 655, 658; 500 NW2d 124 (1993). However, a mere statement of conclusions that are not supported by allegations of fact will not suffice to state a cause of action. *Roberts v Pinkins,* 171 Mich App 648, 651; 430 NW2d 808 (1988). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade v Dep't of Corrections,* 439 Mich 158, 163; 483 NW2d 26 (1992).

Generally, the right to recover benefits for personal injury or occupational disease under the WDCA is the exclusive remedy of an employee against an employer who has complied with the act. MCL 418.131(1); MSA 17.237(131)(1); *Smith v Mirror Lite Co,* 196 Mich App 190, 192; 492 NW2d

744 (1992). The exclusive remedy provision does not apply, however, to claims arising from intentional torts. Section 131(1) of the WDCA provides in part:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

Thus, to avoid the exclusive remedy provision through the intentional tort exception, there must be a deliberate act by the employer and a specific intent that there be an injury. Specific intent is established if the employer had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. MCL 418.131(1); MSA 17.237(131)(1); *Pawlak v Redox Corp,* 182 Mich App 758, 767-768; 453 NW2d 304 (1990). To support such conclusions, a plaintiff must be able to allege a specific danger known to the employer that was certain to result in an injury and must allege that the employer required the plaintiff to work in the face of that danger. *McNees v Cedar Springs Stamping Co,* 184 Mich App 101, 105; 457 NW2d 68 (1990). Whether the facts alleged by the plaintiff are sufficient to constitute an intentional tort is a question of law for the court, but whether the facts are as the plaintiff alleges is a question for the jury. *Adams v Shepherd Products, US, Inc,* 187 Mich App 695, 696-697; 468 NW2d 332 (1991).

For purposes of this motion, the trial court accepted the following facts as true. Plaintiff, a

welder by trade, had been on an extended disability leave after being injured by a tractor driven by another employee. When plaintiff returned to defendant Continental Aluminum Company, his services as a welder were no longer needed, and he was given a job as a packer. Eventually, plaintiff was assigned as a furnace loader.

One night when he arrived for work, the tractor usually used for loading scrap aluminum into the furnace was out of service, and plaintiff was instructed by his supervisor to use a front-end loader that had no protective shield. A roof leak over the pile of aluminum plaintiff was to load into the furnace led to moisture accumulation on the scrap pile. Loading wet scrap aluminum into a vat of molten aluminum is hazardous because of the potential for a steam explosion. These steam explosions, which vary in intensity, can cause molten aluminum to splash outside the furnace vat. In addition to the moisture accumulation, closed aerosol containers were also alleged to be incorporated into the scrap aluminum. As with wet aluminum, loading scrap that contains pressurized canisters into a vat of molten aluminum is hazardous because of the danger of explosion.

During his shift that night, a minor explosion splashed molten aluminum from the vat onto plaintiff's wrist while he sat in the front-end loader, causing a small burn injury. Plaintiff informed his shift leader, defendant Bogdan J. Mazur, of the explosion and of the hazardous conditions existing in the scrap pile. Plaintiff was instructed to take a break, and Mazur contacted his supervisor, defendant Richard Rziemkowski. Despite being informed of the problems with the scrap, the explosion, and plaintiff's injury, Rziemkowski instructed Mazur to continue to have the furnace loaded. Plaintiff was instructed to return

to his duties. A few hours later a major explosion occurred, which showered plaintiff with molten aluminum causing severe burns and serious injury.

In his amended complaint, plaintiff alleged a wide variety of failures, omissions, and other deliberate acts that he claims meets the threshold of an intentional tort. In summary, plaintiff bases his claim on defendants': (1) failure to provide adequate protective clothing; (2) violation of industry standards, including those promulgated pursuant to the Occupational Safety and Health Act and the Michigan Occupational Safety and Health Act and those adopted by the American National Standards Institute, particularly with respect to the failure to require him to wear protective clothing; (3) failure to implement safety rules; (4) requiring him to perform his job in an unshielded tractor; and (5) failure to eliminate the hazards of excessive moisture and sealed aerosol canisters from the scrap aluminum. Plaintiff further alleged that defendants had knowledge: (1) that the use of an unshielded tractor was improper for loading scrap aluminum into the furnace; (2) that plaintiff was performing his job without proper protective clothing while using an unshielded tractor; (3) that they were in violation of safety standards; (4) that a roof leak caused the scrap aluminum to become wet; (5) that wet scrap aluminum can cause a steam explosion when placed on molten aluminum; (6) that pressurized canisters were in the scrap aluminum to be loaded into the furnace; (7) that pressurized canisters can cause an explosion when placed on molten aluminum; (8) that burn injuries can result from an explosion of molten aluminum; (9) that plaintiff had been burned that same evening by an explosion of molten aluminum; (10) that wet scrap or the presence of a

closed canister probably caused that explosion; and
(11) that at least seven other employees had suf-
fered burn injuries that year. Plaintiff alleged that
despite this knowledge of the specific danger of
explosion and the certainty of injury given the
condition of the scrap pile and the lack of protec-
tions provided to plaintiff, defendants nevertheless
ordered him to continue loading the furnace under
the same conditions that existed just before his
earlier injury.

The trial court accepted all of plaintiff's well-
pleaded factual allegations as true. However, the
trial court concluded that these facts, even if true,
established only negligence on the part of defen-
dants and not an intentional tort within the mean-
ing of § 131(1). In this regard, we believe the trial
court erred.

In the amorphous vista of the intentional tort
exception, it is difficult for the courts to establish
any bright-line determination of what combination
of circumstances will constitute an intentional
tort. As observed by Judge SAWYER in his concur-
rence in *Benson v Callahan Mining Corp,* 191
Mich App 443, 450-451; 479 NW2d 12 (1991), the
distinctions between cases finding an intentional
tort and those that do not are subtle at best. The
difficulty arises in determining when the employ-
er's conduct passes from merely providing an un-
safe workplace in which injury is possible or even
likely to the point where an injury is certain to
occur and the employer had knowledge of that
certainty. *Id.*

Despite our inability to formulate a definitive
classification, we are convinced that plaintiff's alle-
gations, if true, are sufficient to constitute an
intentional tort under the statutory exception. An
intentional tort under § 131(1) of the WDCA re-
quires the existence of a deliberate act by the

employer and that the employer specifically in-
tended an injury. This specific intent is deemed to
exist if the employer had actual knowledge that an
injury was certain to occur and wilfully disre-
garded that knowledge. *Pawlak, supra.* In the
present case, plaintiff has alleged that defendants
knew that the roof leaked over the scrap alumi-
num, which caused the scrap he was instructed to
load into the furnace to become wet, and knew
that wet aluminum can cause an explosion of
molten aluminum that can cause burn injuries.
Additionally plaintiff alleged that defendant knew
that sealed canisters were contained in the pile of
scrap and that such canisters can also cause an
explosion of molten aluminum if placed in the vat.
Defendants also knew, as alleged by plaintiff, that
he ·was not wearing proper protective clothing,
that he was working by supervisory directive in an
unshielded tractor, and that he had been injured
earlier that same shift from an explosion of mol-
ten aluminum. Despite this knowledge of a specific
danger and of other burn injuries sustained in the
past, defendants, through the chain of command,
ordered plaintiff to continue loading the wet scrap
that contained pressurized canisters into the fur-
nace vat with an unshielded tractor while not
properly attired with protective clothing.

We believe that these allegations sufficiently
establish that defendants had actual knowledge of
a specific danger—i.e., an explosion of molten alu-
minum—that was certain to result in an injury to
an employee not protected properly with appropri-
ate clothing and equipment and that they wilfully
disregarded that knowledge by requiring plaintiff
to work under the same conditions that produced
his earlier minor injury. *McNees, supra.*

The facts alleged by plaintiff in his amended
complaint are distinguishable from those in *Ben-*

*son, supra.* Plaintiff's allegations suggest more than that his employer had knowledge that an injury was certain to occur at some point in time. We believe that plaintiff's prior injury during that same shift is significant to the requirement that defendants had knowledge that an injury was certain to occur under the conditions in which they required plaintiff to resume working. We are convinced that the allegations presented in this case surpass the threshold of a mere failure to provide safer equipment or other safety devices and cross over into the realm of the intentional tort. Compare *Mirror Lite Co, supra, Benson, supra,* and *Phillips v Ludvanwall, Inc,* 190 Mich App 136; 475 NW2d 423 (1991), with *Adams, supra,* and *McNees, supra.*

While we firmly agree that the intentional tort exception to the exclusive remedy provision of the WDCA is narrow, the exception must have meaning and can exist without a formal declaration by the employer that it desires a particular employee to be injured. In light of the statutory language, the exception encompasses the conditions that existed on the night of plaintiff's injury. These conditions, including the lack of proper protections, the hazardous nature of the scrap aluminum, and the prior explosion that injured plaintiff, are alleged to have been known fully to defendants and combined to create a situation that we have little difficulty determining is sufficient to constitute an intentional tort within the meaning of § 131(1). Plaintiff's amended complaint was not so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade, supra.* Plaintiff must be given an opportunity to establish before a jury whether the facts are as he alleges. *Adams, supra.*

Reversed and remanded. We do not retain jurisdiction.

WEAVER, J., did not participate.